UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONNIE OLVER,<br><br>   Petitioner,<br><br>   v.<br><br>MICHAEL BABCOCK, Warden,<br><br>   Respondent. | No. 2:12-cv-2831 KJN P<br><br><br><br>ORDER |

I. Introduction

Petitioner, a federal prisoner proceeding without counsel, filed a habeas corpus petition pursuant to 28 U.S.C. § 2241. Both parties consented to proceed before the undersigned for all purposes. See 28 U.S.C. § 636(c). Petitioner claims his constitutional rights were violated in connection with a prison disciplinary hearing, and that there was insufficient evidence to support the guilty finding. Petitioner seeks an order expunging the disciplinary hearing report.

Pending before the court is respondent's motion to dismiss. Respondent argues that this action should be dismissed because petitioner failed to exhaust his administrative remedies, and contends that petitioner received all the process to which he was entitled, and that the decision was supported by some evidence. After carefully reviewing the record, the undersigned denies the petition for writ of habeas corpus and therefore need not address respondent's motion to dismiss the petition based on petitioner's failure to exhaust administrative remedies.

II. Exhaustion of Remedies

In general, federal prisoners must exhaust their administrative remedies prior to the filing of a petition seeking relief pursuant to § 2241. Laing v. Ashcroft, 370 F.3d 994, 997 (9th Cir. 2004); Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986). Under this exhaustion doctrine, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed remedy has been exhausted." Laing, 370 F.3d at 998 (quoting McKart v. United States, 395 U.S. 185, 193 (1969)).

However, if a petitioner has not properly exhausted his claims, the district court in its discretion may either "excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court." Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990), overruled on other grounds, Reno v. Koray, 515 U.S. 50, 54-55 (1995). Factors weighing in favor of requiring exhaustion include whether: (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review. Noriega-Lopez v. Ashcroft, 335 F.3d 874, 880-81 (9th Cir. 2003) (citing Montes v. Thornburgh, 919 F.2d 531, 537 (9th Cir. 1990)).

The undersigned is aware of the rationales requiring exhaustion. Nevertheless, the court excuses the exhaustion requirement in the circumstances of this case in order to reach the merits[1] which, as noted, results in the denial of the petition in any event.

III. Motion to Dismiss

Respondent filed a motion to dismiss the petition. Along with the motion, respondent submitted several exhibits, many of which are duplicates of those petitioner appended to the original petition. In the motion, respondent argues the merits of petitioner's claims.

////

---

[1] This denial obviates the need to address petitioner's first claim that respondent interfered with petitioner's First Amendment right to access the courts by failing to permit exhaustion. In light of the instant ruling on the merits of petitioner's claims, he suffered no actual injury from the alleged interference.

1    In dictum, the Supreme Court characterized as inappropriate a motion brought pursuant to
2 Rule 12(b) (6) of the Federal Rules of Civil Procedure in a habeas corpus proceeding. Browder v.
3 Director, Ill. Dept. of Corrections, 434 U.S. 257, 269 n.14 (1978). However, motions to dismiss
4 under Rule 4 of the Federal Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254, are
5 expressly authorized. White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989). Rule 4 allows a
6 district court to dismiss a petition if it "plainly appears from the face of the petition and any
7 exhibits annexed to it that the petitioner is not entitled to relief in the district court. . . ." Rule 4,
8 Fed. R. Governing § 2254 Cases. The Ninth Circuit has allowed a respondent to file a motion to
9 dismiss in lieu of an answer if the motion attacks the pleadings for a failure to exhaust state
10 remedies or alleged violations of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915
11 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to
12 exhaust state remedies); White, 874 F.2d at 602-03 (using Rule 4 as procedural grounds to review
13 motion to dismiss for state procedural default); Hillery v. Pulley, 533 F. Supp. 1189, 1194 & n.12
14 (E.D. Cal. 1982) (same). Thus, a respondent can file a motion to dismiss after the court orders a
15 response. See Hillery, 533 F. Supp. at 1194 & n.12.

16   Rule 7 permits the court to direct the parties to expand the record by submitting additional
17 materials relating to the petition and to authenticate such materials, which may include
18 documents, exhibits, affidavits, and answers under oath to written interrogatories propounded by
19 the judge. Rule 7(a), (b), Fed. R. Governing § 2254 Cases. One purpose of expanding the record
20 is to enable the court to dispose of some habeas petitions that are not dismissed on the pleadings,
21 but to do so without the time and expense required for an evidentiary hearing. Rule 7 Advisory
22 Committee's Note, Fed. R. Governing § 2254 Cases. Here, respondent appended exhibits to the
23 motion to dismiss which were not included with the petition. Accordingly, the court expands the
24 record to include respondent's exhibits.

25   Review of the motion to dismiss and the opposition demonstrates that this action can be
26 resolved on the merits based on application of the law. The expansion of the record permits
27 summary disposition of the petition without a full evidentiary hearing. See Garcia v. Chavez,
28

3

2010 WL 3715514, *2 (E.D. Cal., Sept. 16, 2010)[2] (citation omitted) (28 U.S.C. § 2254 petition expanded to include document appended to motion to dismiss).  In view of the absence of a material issue of fact concerning the authenticity or contents of the instant record, the court will consider the merits of the petition.  Accordingly, the court construes the motion to dismiss to be an answer that responds to the petition.  Conde- Rodriguez v. Adler, 2010 WL 2353522, *4 (E.D. Cal., June 9, 2010) (motion to dismiss construed as an answer).[3]  Thus, in resolving the instant action, the court considers the petition, the motion to dismiss, and petitioner's opposition.

IV.  The Petition

Petitioner contends that his due process rights were violated during a prison disciplinary hearing held on December 7, 2011.  Petitioner argues that his procedural and substantive due process rights were violated because the written notice of the charges incorrectly stated that the alleged assault occurred on August 19, 2011, thus violating the requirement that petitioner be served 24 hour advance written notice prior to the hearing.  (ECF No. 1 at 9.)  Petitioner also argues that he was deprived of his constitutional right to present evidence at the hearing because he was not permitted to present the "Nice Vision Camera System" video beginning at 6:30 a.m. to 7:20 a.m., that was taken on October 11, 2011, or to present Mr. Woodward's medical reports.  (ECF No. 1 at 12.)  Petitioner contends his constitutional rights were violated because his staff representative Mr. French failed to provide assistance in preparing petitioner's defense, and was biased toward plaintiff when Mr. French told petitioner that it was okay for white inmates to call black inmates "nigger."  (ECF No. 1 at 16.)  Petitioner also contends Mr. French failed to watch the video.  Finally, petitioner argues that his prison disciplinary conviction is not supported by "some evidence."

---

[2] The court in Garcia considered a state prisoner's challenge to a disciplinary conviction under 28 U.S.C. § 2254.  Id.  The court concluded that the expanded record demonstrated that the petitioner received all process of law he was due, and that the guilty finding of mutual combat was supported by some evidence.  Id.

[3] In a § 2241 challenge similar to the instant one, the court in Conde-Rodriguez found that the prison disciplinary citing possession of a hazardous tool under § 108 was supported by some evidence based on the petitioner's admission that he paid to use the cell phone, which strengthened the inference that petitioner had control over the instrument.  Id.

V. <u>Legal Standards</u>

A federal prisoner may seek a writ of habeas corpus under 28 U.S.C. § 2241. Section 2241 permits a federal prisoner to "challenge the manner, location, or conditions of a sentence's execution" by habeas review. <u>Hernandez v. Campbell</u>, 204 F.3d 861, 864 (9th Cir. 2000). "Habeas corpus jurisdiction is available under 28 U.S.C. § 2241 for a prisoner's claims that he has been denied good time credits without due process of law." <u>Bostic v. Carlson</u>, 884 F.2d 1267, 1269 (9th Cir. 1989) (citations omitted).

Federal prisoners have a statutory right to earn good-time credits that reduce the term of imprisonment. 18 U.S.C. § 3624(b). Such credits may be revoked for committing certain prohibited acts while imprisoned. 28 C.F.R. § 541.3. Federal prisoners have certain due process rights in the disciplinary proceedings that may take away those credits. <u>See</u> <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556-57 (1974). However, in prison disciplinary proceedings, an inmate is not entitled to the full panoply of due process rights that apply to traditional criminal cases. <u>Wolff</u>, 418 U.S. at 556. Rather, a prisoner's due process rights are limited by the "legitimate institutional needs" of the institution. <u>Bostic</u>, 884 F.2d at 1269. In the prison disciplinary context, due process requires that the prisoner receive: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. <u>Wolff</u>, 418 U.S. at 563-71.

As to the merits of a disciplinary finding, due process requires that the decision be supported by "some evidence." <u>Superintendent v. Hill</u>, 472 U.S. 445, 455 (1984). The "some evidence" standard is "minimally stringent"; a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the fact finder. <u>Id.</u> at 455-56. Determining whether a decision meets this standard on habeas review does not require a federal

1 court to reexamine the entire record, independently assess the credibility of witnesses, or re-weigh
2 the evidence. Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986), overruled in part on
3 other grounds, Sandin v. Connor,. 515 U.S. 472 (1995).  However, the court must ascertain that
4 the evidence has some indicia of reliability and, even if meager, "not so devoid of evidence that
5 the findings of the disciplinary board were without support or otherwise arbitrary." Cato v.
6 Rushen, 824 F.2d 703, 704-05 (9th Cir. 1987) (quoting Hill, 472 U.S. at 457 (1985)).

VI. Analysis

    A.  Advance Written Notice

Petitioner is correct that the Notice of Discipline Hearing incorrectly referenced the date of offense as "8-19-11" rather than October 11, 2011.  (ECF No. 1 at 59.)  In his opposition, petitioner argues that 28 C.F.R. § 541.8 requires the hearing officer to "only conduct a hearing on a charge referred by U.D.C. in the 24 [hour] written notice form."  (ECF No. 33 at 3.)

The Constitution only requires that inmates be afforded those protections mandated by Wolff at a prison disciplinary hearing; it does not require that prison officials comply with their own more generous procedures or time limitations.  See Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994) (prison regulations are designed to guide correctional officials, not confer rights on inmates), abrogated on other grounds by Sandin, 515 U.S. at 472.  Under Wolff, the Constitution requires notice "to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." Wolff, 418 U.S. at 564.  "At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance." Wolff, 418 U.S. at 564.

In this case, petitioner was given advance written notice of the disciplinary charge brought against him.  (ECF No. 1 at 61.)  On October 11, 2011, petitioner was provided a copy of the Administrative Detention Order which stated that plaintiff was placed in the Special Housing Unit for Assault.  (ECF No. 1 at 60.)  The Incident Report, signed by petitioner on November 9, 2011, in section 14, states that the incident occurred on October 11, 2011, at 7:20 a.m., and that it was determined that petitioner assaulted inmate Woodward on October 11, 2011, at approximately 7:20 a.m.  (ECF No. 1 at 61.)  Thus, despite the fact that the notice of hearing subsequently given

1    to plaintiff on November 11, 2011, incorrectly referenced the date of offense as "8-19-11" rather
2    than October 11, 2011 (ECF No. 1 at 59), the advance written notice contained in the incident
3    report was sufficient to comport with due process.  Thus, the typographical error in the date of the
4    incident set forth in the notice of hearing was harmless.  As required under Wolff, the written
5    incident report given to petitioner in advance of the hearing also set forth the evidence relied upon
6    by prison officials and the reasons for the disciplinary action taken against him.  (ECF No. 1 at
7    61.)  Petitioner received the incident report on November 9, 2011, and the hearing did not take
8    place until December 7, 2011.  Thus, petitioner was provided with the advance written notice
9    required by Wolff, and provided more than sufficient time to prepare his defense.
10          Moreover, petitioner provided a copy of his written statement and exhibit list submitted to
11   the hearing officer at the December 7, 2011 hearing, which demonstrates that petitioner was
12   aware that the alleged assault occurred on October 11, 2011, and not August 19, 2011.  (ECF No.
13   1 at 46-67.)
14          B.   Right to Call Witnesses and Present Evidence
15          Petitioner contends he was denied the opportunity to present the "Nice Vision Camera
16   System" video evidence from 6:30 a.m. to 7:20 a.m. on October 11, 2011, and the medical reports
17   of the victim, and was denied the opportunity to question the alleged witnesses to the incident.
18   (ECF No. 1 at 12-13.)  Petitioner contends the video evidence would have shown that the victim
19   sustained the scratch on his head during an earlier fight with the victim's cellmate, rather than
20   during the alleged altercation between petitioner and the victim, because petitioner claims the
21   video does not show petitioner striking the victim in the face.  (ECF No. 1 at 12.)  Respondent
22   counters that the record reflects that the video and the medical record petitioner sought to have
23   the hearing officer review were, in fact, considered.  (ECF No. 27 at 12.)
24          An inmate also has a right to a hearing at which he may "call witnesses and present
25   documentary evidence in his defense when permitting him to do so will not be unduly hazardous
26   to institutional safety or correctional goals."  Wolff, 418 U.S. at 566; see also Ponte v. Real, 471
27   U.S. 491, 495 (1985) (same).  However, as a general rule, inmates "have no constitutional right to
28   confront and cross-examine adverse witnesses" in prison disciplinary hearings.  Ponte, 471 U.S.

at 510 (Marshall, J., dissenting).  See also Baxter v. Palmigiano, 425 U.S. 308, 322-23 (1976) (same).

Documents provided by petitioner confirm that petitioner was allowed to call witnesses. Inmates Gray and Ross provided written statements claiming that petitioner only exchanged words with the victim, not blows.  (ECF No. 1 at 68.)  The Discipline Hearing Officer Report provided by petitioner sets forth the evidence considered by the hearing officer, which included: petitioner's written statement, the "Nice Vision Camera System" video of the alleged incident, which occurred at approximately 7:20 a.m., and petitioner's "several pages of handwritten documents."  (ECF No. 1 at 70.)  Plaintiff provided a copy of the written materials he submitted at the hearing.  (ECF No. 1 at 46-67.)  This document reflects that petitioner requested that the hearing officer review the "Nice Vision Camera System" video beginning at 6:30 a.m. to 7:20 a.m. on October 11, 2011, and the photographs and medical reports of injuries to plaintiff and the victim.  (ECF No. 1 at 62-64.)  Thus, the documentary evidence provided by plaintiff refutes his claim that the hearing officer did not consider this evidence.[4]

But even assuming, *arguendo*, that the hearing officer did not view the "Nice Vision Camera System" video for the time frame 6:30 to 7:20 a.m. on October 11, 2011, such failure does not violate petitioner's due process rights because it was not exculpatory.  Petitioner contends that the victim sustained the scratch on his forehead during an earlier altercation with his cellmate.  (ECF No. 1 at 12.)  However, the reporting employee observed the incident between petitioner and the victim on the "Nice Vision Camera System" video, and saw plaintiff grab the victim by the shoulders, shove the victim into cell #40, and strike the victim in the face."  (ECF No. 1 at 61.)  In addition, the reporting employee stated that during the interview, plaintiff admitted grabbing the victim and shoving him into cell #40.  (ECF No. 1 at 70.)  The victim's statement, included in plaintiff's documents accompanying his statement in defense, stated that petitioner "tapped" the victim in the eye.  (ECF No. 1 at 65.)  The hearing officer noted that the victim's injury assessment documented redness around the victim's eye.  (ECF No. 1 at 70.)

---

[4] Although petitioner did not provide a copy of the photographs or medical reports, respondent provided copies at ECF No. 29 at 74-79.

The Discipline Hearing Officer Report confirms that "[a]ssaulting any person is an attempt or threat to do violence to another, or the non-consensual touching of another person." (ECF No. 1 at 71.) Thus, whether or not petitioner struck the victim in the face, and whether or not the victim sustained the scratch on his forehead during the earlier altercation with his cellmate, the evidence adduced at the hearing supported the assaulting charge based on the allegation that petitioner grabbed the victim and pushed him into cell #40. Therefore, the "Nice Vision Camera System" video from earlier on October 11, 2011, was not exculpatory because the alleged injuries were not mutually exclusive. Moreover, the hearing officer was not required to personally review the "Nice Vision Camera System" video, as he could reasonably rely on the reporting employee's statements. Alexander v. Schleder, 790 F. Supp. 2d 1179, 1187 (E.D. Cal. 2011).

In addition, the charge of assault does not require that the victim sustain an injury. (ECF No. 1 at 71.) Therefore, even if the hearing officer did not consider the victim's medical report, it was of no consequence to the assault charge.

Accordingly, petitioner's claims that he was not permitted to introduce evidence are refuted by the documents provided by petitioner, and are unavailing. Petitioner's claim that he was not permitted to question witnesses to the incident is also unavailing because inmates have no constitutional right to confront or cross-examine adverse witnesses in a prison disciplinary hearing. See Ponte, 471 U.S. at 510 (Marshall, J., dissenting); see also Baxter, 425 U.S. at 322-23.

C. Impartial Hearing Officer

Finally, petitioner makes no claim that the hearing officer was biased. Rather, petitioner now claims that his rights were violated because Lt. Warlick served as both the investigating officer and the reporting officer, allegedly in violation of 28 C.F.R. § 541.5(b), that Warlick was biased, and that the hearing officer should have found this rendered the proceedings unfair. (ECT No. 33 at 4-5.)

Inmates are entitled to have their disciplinary charges heard by an impartial hearing tribunal. See Wolff, 418 U.S. at 570-71 (hearing tribunal must be "sufficiently impartial to

satisfy the Due Process Clause"). The Ninth Circuit has declared that a prison official who has participated in the case as an investigating or reviewing officer, or who has personal knowledge of the incident, is not sufficiently impartial to preside over the hearing. Clutchette v. Procunier, 497 F.2d 809, 820 (9th Cir.1974), modified, 510 F.2d 613, rev'd on other grounds, Baxter, 425 U.S. at 308; see also Wolff, 418 U.S. at 592 (Marshall, J., concurring) ("In my view due process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case, or has had any other form of personal involvement in the case."). The Code of Federal Regulations provides that "[i]n order to insure impartiality, the DHO may not be the reporting officer, investigating officer, or UDC member, or a witness to the incident, or play any significant part in having the charge(s) referred to the DHO." 28 C.F.R. § 541.16(b) (2010).

Here, petitioner does not claim that the hearing officer participated in the investigation, or served as the reporting officer. Moreover, petitioner concedes that no staff witnessed the October 11, 2011 incident. (ECF No. 1 at 12.) Thus, Lt. Warlick's role in reporting and investigating this incident was not tainted by any personal involvement in the alleged incident. The court has reviewed the Discipline Report and finds no evidence of bias or impartiality on the part of the hearing officer.

   D. Staff Representative

Petitioner contends that he was denied the assistance of a staff representative because the staff representative failed to assist petitioner's defense, and was biased toward petitioner. Petitioner contends he was entitled to such assistance based on his confinement in the SHU, relying on Ayers v. Ryan, 152 F.3d 77, 81 (2nd Cir. 1998). (ECF No. 1 at 17.)

However, petitioner did not have a constitutional right to have a staff representative at his hearing. Petitioner is entitled to staff assistance if he is illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." Wolff, 418 U.S. at 570. Petitioner does not allege that he is illiterate, and this incident did not involve a complex matter.

////

In any event, the documents provided by petitioner reflect that he was provided a staff representative who met with petitioner prior to the hearing (ECF No. 1 at 16), obtained a witness statement on behalf of petitioner (ECF No. 1 at 68), appeared at the December 7, 2011 hearing with petitioner (ECF No. 1 at 68), and told the hearing officer that the staff representative reviewed the video of the incident (ECF No. 1 at 16, 68).

Insofar as petitioner's complaints about the nature of the assistance the staff representative provided, because there is no right to assistance of counsel in a prison disciplinary proceeding, there is no such claim as ineffective assistance of counsel by an assisting staff member in that context. See Bostic, 884 F.2d at 1274, citing Baxter, 425 U.S. at 314-15.

The documents provided by petitioner demonstrate that petitioner was afforded all the process due under the United States Constitution in connection with the disciplinary proceeding at issue. Thus, petitioner is not entitled to relief.

E. "Some Evidence"

Petitioner contends that the decision was not supported by "some evidence," primarily by re-arguing his procedural due process claims. (ECF No. 1 at 19-20; 22.)

The standard for reviewing prison disciplinary findings is set forth in Hill and is "minimally stringent." Cato, 824 F.2d at 705. This court is not to re-weigh the evidence or make its own assessment of the credibility of the witnesses. Id. at 455. Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." 472 U.S. at 455-56 (emphasis added). If there is any reliable evidence in the record to support the disciplinary findings, the "some evidence" standard is satisfied, and the decision must be upheld. Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994); Toussaint, 801 F.2d at 1105; Hill, 472 U.S. at 455-56.

Here, the Discipline Report reflects that the "Nice Vision Camera System" video showed plaintiff grab the victim by the shoulders and shove him into a cell. (ECF No. 1 at 70.) This evidence, standing alone, represents "some evidence" that petitioner assaulted the victim. In addition, petitioner put into evidence a statement by the victim that the victim provoked petitioner who "reacted" and "tapped" the victim in the eye. The victim's statement bolsters the video

evidence. Finally, the Discipline Report reflects that "[d]uring mass interviews, several inmates identified and observed [plaintiff] assault [the victim]." (ECF No. 1 at 70.) Therefore, the video, the victim's statement, as well as other inmate witnesses' statements constitute "some evidence" that petitioner assaulted the victim.

V. Conclusion

In accordance with the above, IT IS HEREBY ORDERED that:

1. Respondent's motion to dismiss (ECF No. 27) is construed as an answer; and
2. The petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241, is denied.[5]

Dated: January 2, 2014

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/oliv2831.mtd.2241

---

[5] A certificate of appealability is not required for an appeal from the denial of a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2241. See 28 U.S.C. § 2253; Harrison v. Ollison, 519 F.3d 952 (9th Cir. 2008).

12